IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ERIC ALKEMA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | MEMORANDUM DECISION<br><br>Case No. 2:15-cv-00436- DBP<br><br>Magistrate Judge Dustin B. Pead |

　　　　The parties consented to this court's jurisdiction under 28 U.S.C. 636(c). (ECF No. 15.) Currently pending before the court is Plaintiff Eric Alkema's ("Plaintiff") appeal of the Commissioner of Social Security's ("Commissioner") decision denying Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 401–33. The parties did not request oral argument. Having considered the parties' briefs, the administrative record, and the relevant law, this court **AFFIRMS** the Commissioner's decision.

## I.　　PROCEDURAL HISTORY

　　　　Plaintiff protectively filed an application for Social Security Disability Benefits on February 9, 2012, alleging an onset date of May 24, 2011. (Tr. 15.) The application was denied initially on May 24, 2012, and upon reconsideration on August 1, 2012. (*Id.*) Plaintiff filed a written request for hearing on August 30, 2012. Administrative Law Judge David K. Gatto presided over a hearing on September 18, 2013. (*Id.*) The ALJ denied benefits by decision on December 11, 2013. (Tr. 25.) Plaintiff appealed this denial. (Tr. 21.) The Social Security's Appeals Council denied review on May 21, 2015. (Tr. 1–4). Plaintiff then filed the present suit.

## II.     FACTUAL BACKGROUND

Plaintiff was born in 1976. (Tr. 150). Plaintiff obtained a GED and has past work experience as a construction contractor. (*Id.*) Plaintiff claims he became disabled in May 2011, due to injuries to his back and shoulder as well as depression. (Tr. 126–29, 149.) The record contains evidence that Plaintiff was diagnosed with degenerative disc disease in 2008. (Tr. 209.) Plaintiff underwent a lumbar laminectomy which appears to have alleviated his symptoms. (Tr. 281.) In 2011 Plaintiff was involved in a motor vehicle accident and again reported back pain, as well as shoulder pain. (Tr. 216, 239–40.) Plaintiff participated in physical therapy and received medications to help with the pain throughout summer 2011. (Tr. 216, 220–37, 244, 283.) There is a gap in the treatment records from August 2011 until February 2013. The 2013 records show that Plaintiff reported pain in his back and legs. (Tr. 329.) Plaintiff continued taking medication, but stopped taking Lortab because it made him sick. (*Id.*) Plaintiff received steroid injections in February and March 2013. (Tr. 332, 336, 340.)  During the administrative proceedings, state agency physicians Drs. Dennis Taggert and Lewis Barton reviewed the record and opined that Plaintiff was capable of performing light work. (Tr. 52–53, 66–67); *see* 20 C.F.R. § 404.1567(b).

The record does not contain any reference to mental-health treatment during the relevant period. Plaintiff met with Dr. Paul Staheli, Ph.D., during the pendency of this claim. Plaintiff described symptoms of his depression to Dr. Staheli. (Tr. 325–38.) Dr. Staheli assessed Plaintiff a global assessment functioning score ("GAF") of 50, indicating serious symptoms. (*Id.* at 328); *see* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32–34 (rev. 4th ed. 2000). Dr. Staheli also noted that Plaintiff had difficulty with sustained concentration and adaption, but had intact reasoning, understanding and memory. (Tr. 325–328.) State agency psychologists Bernaldo Garso, Ph.D., and John Gill, Ph.D., reviewed the record and

opined that Plaintiff did not have a medically determinable impairment that significantly limited his mental ability to do basic work-related activities. (Tr. 50–51, 64–65); *see* 20 C.F.R. 404.1521.

### III. STATEMENT OF RELEVANT LAW

#### A. Definition of Disability Under the Act

The Act states that an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *Id.*; *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002).

#### B. Process for Determining Disability Under the Act

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process. The adjudicator considers whether a claimant: (1) engaged in substantial gainful activity during the alleged disability period, (2) had a severe impairment, (3) had a condition that met or medically equaled the severity of a listed impairment, (4) could return to his past relevant work, and if not (5) could perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4). If a decision regarding the claimant's disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. *Id.*

#### C. Standard of Review

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal

standards were applied. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Where the evidence as a whole can support the agency's decision or an award of benefits, the court must affirm the agency's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## IV.     THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date, May 24, 2011. (Tr. 17.) At step two, the ALJ found that Plaintiff suffered from one severe impairment: degenerative disc disease of the cervical and lumbar spine. (*Id.*) At step three, the ALJ found that claimant did not meet any listed impairment. (Tr. 19.) At step four, the ALJ found that claimant was capable of performing his past relevant work as a construction contractor. (Tr. 23.) The ALJ continued to step five and found, alternatively, that Plaintiff could make an adjustment to perform jobs that exist in significant numbers in the national economy. (*Id.* at 24–25.)

## V.     DISCUSSION

Plaintiff raises three alleged errors on appeal. First, Plaintiff alleges the ALJ failed to properly evaluate the opinions of Paul Staheli, Ph.D. Second, Plaintiff urges that substantial evidence does not support the ALJ's finding that Plaintiff can perform light work. Third, Plaintiff argues that the ALJ's step-four and step-five findings are not supported by substantial evidence. The court will examine these arguments in the order raised.

### a. The ALJ did not err in analyzing Dr. Staheli's opinions

Plaintiff has not demonstrated that the ALJ erred in his review of the medical opinion evidence. Plaintiff asserts that the ALJ erred by finding the report of mental-health expert Paul Staheli, Ph.D, internally inconsistent and not affording the opinion controlling weight. (ECF No. 17 at 6–9.) Plaintiff contends that the ALJ acted inappropriately by noting these inconsistencies and not strictly following the factors identified in *Watkins v. Barnhart*. 350 F.3d 1297, 1301 (10th Cir. 2003).

The court disagrees. First, as the Commissioner points out, Dr. Staheli was not a treating physician as defined by the *Watkins* decision. The ALJ does not need to treat Dr. Staheli as a "treating source if [Plaintiff's] relationship with the source is based solely on [his] need to obtain a report in support of [his] claim for disability." *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). Plaintiff does not indicate he saw Dr. Staheli aside from the one visit made for purposes of this claim. Thus, Dr. Staheli's opinions are not entitled to controlling weight.

Turning to the applicable factors for evaluating medical opinion evidence, Plaintiff has not demonstrated the ALJ committed error. The ALJ appears to be commenting on the third factor, supportability. *See* 20 C.F.R. § 416.927(c)(3). An ALJ may consider "the explanation a source provides for an opinion . . . ." *Id.* The ALJ concluded that Dr. Staheli's finding that Plaintiff had difficulty with sustained concentration was inconsistent with Dr. Staheli's other findings: that Plaintiff followed conversation well, had goal-directed thought processes, and was able to adequately perform various tasks related to memory and reasoning. (Tr. 18–19, 23, 325–28.) As the Commissioner points out, Dr. Staheli only supports his opinion regarding Plaintiff's limited concentration with Plaintiff's self-report that he could concentrate for only "a few minutes." (Tr. 328.)

Further, even to the extent this analysis does not fall under the supportability factor, the list of factors Plaintiff invokes is not exhaustive. The final criterion is "any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion." 20 C.F.R. § 416.927(c)(6). Plaintiff has not explained why internal inconsistency is an inappropriate factor under this provision. No reason is apparent to the court. Even the *Watkins* case cited by Plaintiff requires only that the ALJ "give good reasons in the notice of determination or decision" to support his conclusions. *Id.* The ALJ has done so here. The court does not find that the ALJ erred in reaching this conclusion because internal inconsistency is a good reason to afford an opinion lesser weight.

Plaintiff modifies his argument in his reply, by asserting that Dr. Staheli's concentration findings are not inconsistent. Plaintiff argues that Dr. Staheli's conclusion that Plaintiff had difficulty with sustained concentration is not inconsistent with separate findings of what Plaintiff describes as periodic concentration. In other words, Plaintiff suggests that Dr. Staheli concluded only that Plaintiff could not concentrate for an eight-hour work day, which is consistent with intermittent ability to concentrate. Plaintiff suggests that his conversational skills, goals, and performance on various tasks only evidence intermitted ability to concentrate.

Plaintiff's argument does not mandate remand because it invites the court to impermissibly substitute its judgment for that of the ALJ. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (stating that reviewing courts cannot "reweigh the evidence or substitute [its] judgment for the Commissioner's."). Dr. Staheli's report does not contain the sustained versus periodic dichotomy suggested by Plaintiff. While the court understands an opinion regarding work fitness necessarily has a relationship to the work day, Dr. Staheli's report does not indicate that Plaintiff can concentrate for short bursts, but not for an eight-hour period. This gloss is

6

added by Plaintiff. Dr. Staheli's report regarding Plaintiff's mental status as it relates to concentration indicates that Plaintiff performed successfully on tests and had "no difficulty following conversation." (Tr. 327.) Notwithstanding the successful test results, Dr. Staheli concluded that Plaintiff has difficulty sustaining concentration. (*Id.* at 328.) The mental status notes indicating Plaintiff performed well on concentration tests can be fairly read as being incongruous with Dr. Staheli's conclusion regarding Plaintiff's limited concentration. Thus, Plaintiff has not demonstrated that the ALJ erred by determining the findings were contradictory. At best, Plaintiff has shown there is another interpretation of the evidence that the ALJ could have used. Yet, Plaintiff has not shown the ALJ's differing interpretation was impermissible. This court is not in a position to select between two reasonable interpretations.

Finally, Plaintiff's ability to concentrate is supported by substantial evidence. Plaintiff suggests that the Commissioner does not point to any evidence that Plaintiff can sustain concentration. (ECF No. 24 at 3.) This is not true. The Commissioner correctly points out that Plaintiff himself stated he had no trouble maintaining concentration for "hours." (ECF No. 23 (citing Tr. 172–73, 187–88).) This, and other evidence, supports the ALJ's decision to afford greater weight to the DDS medical consultants because they were "consistent with the record as a whole . . . ." (Tr. 23.) Both state agency psychologists, Bernaldo Garso, Ph.D., and John Gill, Ph.D., reviewed the record and found that Plaintiff had no limitations maintaining concentration, persistence or pace. (Tr. 51, 64.). The DDS opinions finding Plaintiff was not limited in his ability to maintain concentration are consistent with Plaintiff's own statements that he could concentrate for hours.

### b. The ALJ's finding regarding Plaintiff's ability to perform light work is supported by substantial evidence in the record

Plaintiff ostensibly argues that substantial evidence does not support the ALJ's finding that Plaintiff can perform light work. In her brief, the Commissioner points to substantial evidence supporting the ALJ's decision. (*See* ECF No. 23 at 12–15.) For example, the ALJ relied on state agency physicians Dr. Taggart and Dr. Barton, who both opined Plaintiff had abilities consistent with performing light work. (Tr. 52–53, 66–67); *see* 20 C.F.R. § 404.1567(b). Otherwise, the ALJ and the Commissioner point to inconsistencies between Plaintiff's complaints, the medical record, and Plaintiff's reports of his own activities. (ECF No. 23 at 12–15 (citing evidence in the record supporting the ALJ's decision).)

Instead of addressing the evidence supporting the ALJ's decision, or describing an overall lack of evidence, Plaintiff recites the evidence he believes is favorable to him. In this way, Plaintiff appears to invite the court to reweigh the evidence before the ALJ. This court cannot reweigh this evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (stating that reviewing courts cannot "reweigh the evidence or substitute [its] judgment for the Commissioner's."). The favorable evidence is not so overwhelming that the ALJ's decision was unreasonable. Understandably, Plaintiff prefers the ALJ would have interpreted the evidence differently. But the court is not in a position to reweigh that evidence.

Plaintiff makes one statement in his opening brief that appears to allege error: "improper rejection of the only treating or examing source opinion to specifically address sustainability related issues." (ECF No. 17 at 11.) This statement appears to simply repeat the error regarding Dr. Staheli's opinion, addressed previously.

In reply, Plaintiff states that the ALJ did not take into account medication side effects. (ECF No. 24 at 5.) This is not true. The ALJ specifically addressed Plaintiff's reports of side

effects in the RFC determination. (Tr. 20.) Again, the court understands that Plaintiff prefers the ALJ had accepted these reports and found him disabled. The ALJ was not required to do so.

The remainder of Plaintiff's reply again cites evidence favorable to Plaintiff, but does not address the adequacy of the evidence supporting the ALJ's decision, which was cited by the Commissioner. The court cannot reweigh the evidence here. Plaintiff's citation to favorable evidence, without more, does not establish that the ALJ erred. The Commissioner identified substantial evidence supporting the ALJ's decision. Plaintiff has not demonstrated that the ALJ erred in finding Plaintiff capable of performing light work.

### c. The ALJ's findings at steps four and five are supported by substantial evidence

In his final argument, Plaintiff states that Vocational Expert Ken Lister ("VE") improperly relied on a document given to him by another ALJ ("the List"), rather than the Occupational Outlook Handbook, to determine the number of available jobs in the national economy. (ECF No. 17 at 11–13.) Plaintiff provides a transcript of a hearing in another case. In that case, the VE testified that he relied, in part, on the List provided to the VE by ALJ Robin Henrie, to determine the number of jobs available in that case. (*Id.* at Ex. B.) The VE admitted to receiving the List several years earlier. (*Id.* at Ex. A–B.) Plaintiff argues that the VE's testimony in this case is unreliable because his testimony is tainted by the List and thus the case must be remanded. The court cannot agree because Plaintiff has not identified any harmful error.

First, as the Commissioner points out, Plaintiff only alleges that the VE's testimony is unreliable in the other case as it relates to the VE's calculation of the number of available jobs. (*See* ECF No. 17 at 12.) While Plaintiff states that the ALJ relied on the VE's testimony at step four, Plaintiff does not suggest that the VE's testimony is unreliable as it relates to the ALJ's step-four finding, which is not dependent upon job numbers. In this case, the ALJ concluded at

9

step four that Plaintiff could perform his past work as a construction contractor as defined in the Dictionary of Occupational Titles ("DOT"). This step-four finding is not dependent on the number of available jobs. While the ALJ must consider the number of jobs available in the national economy at step five, the same is not true at step four. Also, the ALJ could have ended his analysis at step four after concluding Plaintiff could perform his previous work. The ALJ's step-five finding was made only in the alternative. In sum, Plaintiff has not shown that this alleged error affected the step-four finding and the ALJ's decision survives even assuming the step-five analysis is flawed.

Alternatively, Plaintiff has not demonstrated that the ALJ committed harmful error at step five. An alleged error does not merit remand unless it is harmful. *See Poppa v. Astrue*, 569 F.3d 1167, 1173-74 (10th Cir. 2009). As an initial matter, there is no evidence that the VE used the List in this case. Plaintiff attaches materials that show the List was used in the prior case and invites the court to conclude it was used here. While Plaintiff has shown that the VE had the opportunity to use the List, Plaintiff points to no evidence the List was actually used here.

Perhaps more importantly, even assuming the VE consulted the List, Plaintiff has not pointed to any impact it had on his case. Plaintiff relies on *Overman v. Astrue*. 546 F.3d 456 (7th Cir. 2008). In the *Overman* case, the Seventh Circuit found that a vocational expert's testimony was unreliable and remand was warranted where the vocational expert's testimony conflicted with the description of positions listed in the DOT. *Id.* at 462. Here, Plaintiff does not argue that the VE provided an incorrect description of any job, arrived at an inappropriate number of jobs, or that the VE's testimony otherwise conflicts with acceptable sources (such as the DOT or Occupational Outlook Handbook). Instead, Plaintiff argues that because the VE previously testified based on unreliable information in a separate case, the VE's testimony should be treated

as flawed in this case. The court does not reach this conclusion. Plaintiff is not excused from demonstrating some harm from the alleged error in this case. He has not identified any such harm. Thus, Plaintiff has demonstrated no harmful error at step four or step five.[1]

## VI. ORDER

Based on the forgoing, the court **AFFIRMS** the Commissioner's decision.

Dated this 15th day of April, 2016.

_____
Dustin B. Pead
United States Magistrate Judge

---

[1] Given the court's conclusion that the ALJ committed no error at step four or step five, it need not reach the Commissioner's argument that the evidence regarding the VE's testimony is not properly part of the administrative record here.